IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSHUA EVANS, | Civil Action No. 2: 15-cv-0110 |
| Petitioner, | United States Magistrate Judge |
| v. | Cynthia Reed Eddy |
| THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA, THE DISTRICT ATTORNEY OF ALLEGHENY COUNTY, and JOHN KERESTES, Warden of SCI Mahoney, | |
| Respondents. | |

**MEMORANDUM OPINION[1]**

Petitioner, Joshua Evans, is a state prisoner incarcerated at State Correctional Institution Mahanoy in Frackville, Pennsylvania. He seeks a writ of habeas corpus, *pro se*, pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition will be denied.

**I.      Procedural History**

Evans was charged with two counts each of Criminal Attempt (Homicide) and Aggravated Assault, one count of Robbery (Serious Bodily Injury Inflicted), one count of Firearms Not to be Carried Without a License, and two counts of Recklessly Endangering Another Person (REAP), in connection with an incident that took place on May 24, 2007, in a public playground in Wilkinsburg, PA.

On March 30, 2009, a non-jury trial commenced before the Honorable Anthony M. Mariani. At the close of the trial, the court found Evans not guilty of the two attempted murder

---

[1]      In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment. *See* ECF Nos. 11 and 13.

1

charges and the robbery charge, but found him guilty of both aggravated assault counts, the firearms offense, and the two REAP counts. According to the Superior Court, the relevant facts leading to Evans's conviction are as follows:

> [O]n May 24, 2007, Brandi McWright, a three-month old girl, and Andre Ripley were shot in Ferguson Park, a neighborhood playground, in Wilkinsburg, Pennsylvania at approximately 9:00 p.m. Wilkinsburg police officer Ronald Waz, who was in the area, heard approximately seven gunshots coming from the area of the playground. He observed two young boys running toward him. The boys told Officer Waz that two groups of individuals were shooting at each other. When he arrived at Ferguson Park, Officer Waz observed what he described as "total chaos" at the playground. Ebony McWright, the mother of Brandi [McWright], and her cousin, Angel Perry, were at the playground with their children but they were too hysterical to speak to Officer Waz.
>
> Officer Waz spoke with Andre Ripley, one of the victims. Ripley testified at trial that he was in Ferguson Park and [Evans] approached him. [Evans] told Ripley to "kick it up," referring to [Ripley's] watch. Ripley believed [Evans] was attempting to rob him of the watch. Ripley responded "negative" and [Evans] began firing a gun at Ripley. Ripley attempted to flee but was shot in the arm. Trial testimony also established that Brandi McWright, the three-month old child, was also shot at this time while she was sleeping in her stroller. She was shot in her elbow, her thigh, and her calf. During the shooting, there were at least eight and as many as ten children in the playground. Numerous shots were fired during the shooting.
>
> Ebony McWright testified she did not witness the shooting. She did observe [Evans] in the playground prior to the shooting. She testified that she heard many gunshots. Immediately after the shooting, she observed [Evans] run past her carrying a silver colored gun.

Superior Court Decision, 12/16/2011 at 1-2 (quoting the Trial Court Opinion, filed July 13, 2011, at 2-3). Sentencing was deferred pending the preparation of a presentence report.

On June 22, 2009, Evans was sentenced as follows: to a term of 7-1/2 to 15 years imprisonment for the first aggravated assault conviction; a consecutive term of 15 years probation for the other aggravated assault conviction; and a consecutive term of 3-1/2 to 7 years imprisonment for the firearms conviction. No further penalty was imposed at the remaining

2

counts. Thus, Evans received an aggregate term of 11 to 30 years imprisonment, followed by a 15-year probationary term.

Evans, through counsel, filed post-sentencing motions claiming that trial counsel was ineffective for failing to object to Evans's improper REAP charges and convictions and to the court's alleged improper use as substantive evidence as to at least one of Evans's recorded calls from jail. Following a hearing, the trial court denied the motions.

Evans filed a direct appeal with the Superior Court, in which he raised five errors, including the above ineffective assistance of counsel claim. On December 16, 2011, the Superior Court affirmed the judgment of sentence, but declined to address the ineffectiveness claim absent an express waiver of further PCRA review. Evans filed a Petition for Allowance of Appeal (PAA) with the Pennsylvania Supreme Court, which was denied on May 23, 2012.

Unsuccessful on direct appeal, Evans filed a timely pro se petition under the Pennsylvania Post-Conviction Relief Act (PCRA). On collateral review, Evans, through counsel, raised the same ineffectiveness claim that had been raised in his post-sentencing motions and on direct appeal. After giving the requisite notice, the PCRA court, which was the same judge as the judge who presided over Evans's trial, denied the PCRA petition. Evans appealed to the Superior Court, raising the same ineffectiveness claims raised in his PCRA petition. On March 3, 2014, the Superior Court affirmed the dismissal of the PCRA petition. Evans sought leave to appeal to the Supreme Court of Pennsylvania but that request was declined on July 29, 2014.

Having been denied relief in state court, Evans filed *pro se* the instant habeas petition, pursuant to 28 U.S.C. § 2254, in which he raises the following five ineffectiveness claims, none of which has been raised previously:

3

> 1. Ineffectiveness of trial counsel for failing to investigate and presenting mitigating evidence, namely Petitioner's psychological disorder. Petitioner contends that PCRA counsel was ineffective for failing to raise this issue.
>
> 2. Ineffectiveness of trial counsel for failing to present two witnesses. Petitioner contends that PCRA counsel was ineffective for failing to raise this issue.
>
> 3. Ineffectiveness of trial counsel for coercing Petitioner's testimony regarding the gun. Petitioner contends that PCRA counsel was ineffective for failing to raise this issue.
>
> 4. Ineffectiveness of trial counsel for representing Petitioner despite a conflict of interest. Petitioner contends that PCRA counsel was ineffective for failing to raise this issue.
>
> 5. Ineffectiveness of trial counsel for failing to present mitigating evidence. Petitioner contends that PCRA counsel was ineffective for failing to raise this issue.

Habeas Pet. at 7-14 (ECF No. 1). Respondents filed a timely Answer (ECF No. 10) and the relevant state court records, to which Evans filed a timely Reply Memorandum. (ECF No. 14). The Court has reviewed the filings by the parties, as well as the state court record, including the transcripts from Evans's non-jury trial, sentencing proceedings, and post-sentencing hearing. The matter is fully briefed and ripe for disposition.

## II. Standard of Review

### A. 28 U.S.C. § 2254

This case is governed by the federal habeas statute applicable to state prisoners. 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, enacted on April 24, 1996 ("AEDPA"), "which imposes

significant procedural and substantive limitations on the scope" of the Court's review.[2] *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 227 (3d Cir. 2017). Under AEDPA, a petitioner must " 'ha[ve] exhausted the remedies available in the courts of the State,' 28 U.S.C. § 2254(b)(1)(A), before seeking federal habeas relief, and a claim will be deemed unexhausted if the petitioner 'has the right to file under the law of the State to raise, by any available procedure, the question presented,' but has failed to do so, *id.* § 2254(c)." *Id*.

Evans concedes that none of his claims was exhausted in state court. He also acknowledges that all of his claims are procedurally defaulted, but argues that the default should be excused because his PCRA counsel was ineffective for not raising these claims. A habeas petitioner's procedural default may be excused if the petitioner can show cause for the default and prejudice from arising from failure to consider the claim. *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 236 (3d Cir. 2017) (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)).

If cause and prejudice are shown and the default excused, the Court's review of the habeas claims is *de novo* because the state court did not consider the claim on the merits. *Id*. at 236 (citing *Bronshtein v. Horn*, 404 F.3d 700, 710 n.4, 715 (3d Cir. 2005). If, however, a constitutional claim is properly raised in state court and, therefore, not procedurally defaulted, the state court's determination is afforded substantial deference under AEDPA.

The five ineffectiveness claims raised in this habeas petition were not raised by Evans's PCRA counsel. Accordingly, the Court concludes that these claims are procedurally defaulted and may be reviewed only if the default can be excused.

---

[2] The first consideration in reviewing a federal habeas petition is whether the petition was timely filed under AEDPA's one-year limitations period. 28 U.S.C. § 2254(d). Respondents do not dispute that Evans's petition was timely filed.

Pursuant to the United States Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. 1 (2012), counsel's failure to raise an ineffective assistance claim on collateral review may excuse a procedural default if: (1) collateral attack counsel's failure itself constituted ineffective assistance of counsel under *Strickland*, and (2) the underlying ineffective assistance claim is a substantial one. *Martinez,* 566 U.S. at 14.

Because Evans's claims that his PCRA counsel's assistance was ineffective stems from the strength of his underlying ineffective assistance of trial counsel claims, the Court considers the second *Martinez* requirement first. To satisfy this requirement, the petitioner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one." *Id.* "In other words, 'the [petitioner] must demonstrate that the claim has some merit'." *Bey*, 856 F.3d at 238 (*quoting Martinez*, 566 U.S. at 14).

With this framework in mind, Evans's ineffective assistance of counsel claims will be reviewed.

### III. Review of Petitioner's Claims

Evans was represented by Attorney Komron J. Maknoon during his non-jury trial and sentencing. Court-appointed attorney Scott Coffey represented Evans during his post-sentencing proceedings, on direct appeal, and during his PCRA proceedings.

The clearly established federal law with respect to a claim of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the now familiar *Strickland* standard, Evans must show that his counsel's performance was deficient and that this deficiency prejudiced his defense. *Bey,* 856 F.3d at 238 (quoting *Strickland,* 466 U.S. at 694). These are referred to as the "performance" and "prejudice" prongs of the *Strickland* test. *Id.* As to the performance prong, there is a strong presumption that counsel's conduct was reasonable.

6

*Strickland*, 466 U.S. at 689. As to the prejudice prong, the United States Supreme Court held that "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The burden is on the petitioner to establish both *Strickland* prongs. On habeas review, a court "may begin and, when dispositive, end with either of *Strickland's* two prongs." *Mathias v. Superintendent Frackville SCI,* 869 F.3d 175, 189 (3d Cir. 2017).

Respondents argue that Evans's trial counsel ineffectiveness claims are meritless and insubstantial and, therefore, do not establish "cause" to overcome the default. Evans's claims will be addressed seriatim.

1. <u>Failure to Present Mitigating Evidence</u>[3]

In Claim 1, Evans argues that his trial counsel was ineffective for failing to investigate and present mitigation evidence, namely his psychological disorder, at trial and that PCRA counsel was ineffective for not raising this issue. In Claim 5, which basically mirrors Claim 1, Evans argues that trial counsel was ineffective for failing to investigate and/or present mitigation evidence of a psychological condition at sentencing. In his Petition, Evans does not offer any elaboration or factual or argumentative support of these claims. However, in his Reply addressing Respondents' argument that these are undeveloped claims and are insufficient to require habeas relief, Evans lists the following "facts" to support his claims:

> "Fact 1: Petitioner was admitted to St. Francis psychological hospital as a child 7 yrs age . . . [and] was diagnosed with ADHD."

---

[3] Because Claims 1 and 5 are related, they will be presented together. In Claim 1, Evans argues that trial counsel was ineffective for failing to investigate and present mitigation evidence, namely his psychological disorder, at trial and that PCRA counsel was ineffective for not raising this issue. In Claim 5, Evans claims that trial counsel was ineffective for failing to investigate and/or present mitigating evidence of a psychological condition at sentencing.

7

"Fact 2: Petitioner was bullied and teased for being poor as a child growing up which caused petitioner depression and schizophrenia which led to petitioner having erratic behavior as a child. Petitioner's organic brain disorder arose again in an incident in Petitioner's 5th grade yr. of school . . . which resulted in Petitioner being arrested."

"Fact 3: Petitioner was in and out of juvenile detention program and on medication through Petitioner's adolescent yrs. Petitioner lack the foundation of a structured household."

Fact 4: Petitioner's mother, sister, grandmother, two uncles and aunt all have "mental disabilities."

"Fact 5: During time of Petitioner's trial Petitioner was in a deep state of mental illness which caused Petitioner to be coerced by trial counsel. . . . Petitioner's vulnerability from mental illness and lack of knowledge and understand allowed trial counsel to ineffectively represent Petitioner."

While Evans claims that counsel failed to complete a psychological evaluation which would have revealed a "serious organic brain disorder," he has offered nothing to show that any mitigation evidence exists, much less that such mitigation evidence would have changed the outcome of the trial. Further, Evans has not suggested how his "serious organic brain disorder" would have mitigated his responsibility in this case. He testified at trial and asserted self defense. He testified coherently and in great detail as to his version of the events. (TT at 328-426).

Before turning to the merits of Claim 5, that counsel was ineffective for failing to investigate and/or present mitigating evidence of a psychological condition at sentencing, the Court notes that this is not the first time Evans has challenged his sentence. On direct appeal, Evans claimed that the sentencing court failed to provide an adequate, on-the-record statement of reasons for imposing minimum sentences above the aggravated range of the sentencing guidelines. Evans also complained, *inter alia,* that the sentencing court imposed manifestly

excessive sentences for the aggravated assault and the firearms convictions, which were disproportionate to the offenses. The Superior Court rejected these arguments. Superior Court Opinion, December 16, 2011 (ECF No. 10-3).

Additionally, the Superior Court noted that the sentencing court had the benefit of a PSI report at sentencing and, therefore, can presume it considered the relevant factors when sentencing Evans. *See Commonwealth v. Tirado*, 870 A.3d 362, 365 (n.5 (Pa. Super. 2005) (stating where sentencing court had benefit of PSI, law assumes court was aware of and weighed relevant information regarding defendant's character and mitigating factors). At the sentencing hearing, Petitioner, his mother, Lajean Patterson, and his grandmother, Lajean Evans, testified on his behalf.

The sentencing transcript reflects that the sentencing court detailed Evans's family life and his personal background, as reflected in the presentence report:

> Mr. Evans' troubles, at least from the record, appears to have started when he was thirteen. At the age of fourteen he was charged through a petition with possession of a weapon on school property. There was a consent decree that resulted from that. Later that was revoked; 90-day program at Vision Quest, boot camp.
>
> He returned home after that on probation. Later a warrant was issued because he absconded from electronic monitoring. The Court determined he failed to adjust. . . . it appears that Mr. Evans was not doing well under supervision.
>
> Later at the age of fifteen he is charged with false identification to law enforcement, committed to boot camp, absconds from home on electronic monitoring. New charges after another stint at Vision Quest. Absconded from another facility after that. His whereabouts were unknown from April 30, 2007 until June 1, 2007, when he was arrested.
>
> It does appear that Mr. Evans has rejected every attempt at trying to help him see a better way to live. I mentioned to his mother that I watched the pain on her face during this trial. She suffered through listening to this.
>
> . . .

> Despite having a mother who is teaching him not only through words and discipline, but being a working person herself, and a grandmother who is a minister, who counsels him in a way few of us can have access to . . . and despite that he takes a loaded firearm into a kids' party and discharges it.
>
> It appears to this [c]ourt that [Appellant] rejects opportunities that others don't even have, and then blames his conduct on being raised in Wilkinsburg. That is what this comes down [to]. I smoked a few joints and I am raised in Wilkinsburg, and therefore I carry a loaded firearm, therefore I continue to run from all efforts to help me direct myself.
>
> He is an intelligent guy. It is his [choice], despite opportunity to do otherwise, despite care and love for people close to him to do otherwise. What I see is a young man who for reasons I can't figure out wants to live the life he was living, because he certainly had many, many opportunities to live a different life.
>
> I think the streets will be dangerous with [Appellant] on them . . . . I'm sad to say that to you, [Appellant]. I see a young, healthy guy who is smart, who can do so many things if he wanted to do anything. He could do so many things well, and he keeps choosing to go the other direction.
>
> I am sad for what I am going to do in this sentencing for you and your mother. I'm sad about it. And your grandmother, but I don's really see that you embraced at all the idea that you shouldn't be living the life you have been living. It seems to me every chance you get you run to that life. You reject all [attempts] to try to persuade you otherwise from your mother, grandmother, from any facility where you have been placed, from school. You have rejected it all. Even up to this minute I am not convinced that anything you have done is for your own good, as opposed to impressing me that I should sentence you to something as little as possible.

Sentencing Transcript, 6/22/09, at 25-30.

The Court finds that Evans has not met his burden on these claims. He has failed to prove that any mitigation existed as to his alleged psychological disorder. Further, he has failed to show that his counsel knew or should have known that such evidence existed and/or that such evidence would have changed the outcome of the trial or the sentencing proceeding. Because the underlying ineffectiveness claim against trial counsel fails, PCRA counsel was not ineffective for failing to raise this issue. Accordingly, Claims 1 and 5 will be denied.

2.   Failure to Present Witnesses

Evans contends that trial counsel was ineffective for failing to call three eyewitnesses to testify at trial: Quinten Anderson, Terrell Evans (Petitioner's cousin), and Maurice Jackson[4] and that his PCRA counsel was ineffective for failing to raise the issue. In his Petition, Evans did not elaborate in any fashion. However, in his Reply Brief, Evans states that these witnesses "would have established self/defense / justifiable" on his behalf.

To establish ineffectiveness for failure to call a witness under Pennsylvania law, Evans must show that "(1) the witness existed; (2) the witness was available; (3) counsel [knew] of the [witness's] existence; (4) the witness was prepared to cooperate and testify . . . ; and (5) the absence of the testimony was prejudicial." *Commonwealth v. Khalifa*, 852 A.2d 1238, 1240 (Pa. Super. 2004).[5] "A defendant must establish prejudice by demonstrating that he was denied a fair trial because of the absence of the testimony of the proposed witness. Further, ineffectiveness for failing to call a witness will not be found where a defendant fails to provide affidavits from the alleged witnesses indicating availability and willingness to cooperate with the defense." *Commonwealth v. O'Bidos*, 849 A.2d 243, 250 (Pa. Super. 2004). In the context of an ineffectiveness claim based upon a failure to call a witness, the habeas petition "must make a specific, affirmative showing as to what the missing evidence would have been, and prove that this witness's testimony would have produced a different result." *Danner v. Cameron*, 955

---

[4]   In his petition, Evans states that counsel was ineffective for failing to call <u>two</u> unidentified witnesses. However, in his Reply, he identifies <u>three</u> eyewitnesses who were not called to testify: Quintin Anderson, Terrell Evans, and Maurice Jackson.

[5]   The United States Court of Appeals for the Third Circuit has noted that it is "troubled" by the requirement that a PCRA petitioner must show that a witness was "ready, willing and able to testify at trial" as defense counsel can compel a witness to appear at trial and testify through the use of a trial subpoena. *Gregg v. Rockview*, 596 F. App'x 72, 76 n.4 (3d Cir. 2015) (citing *Grant v. Lockett,* 709 F.3d 224, 239 n.10 (3d Cir. 2013)).

F.Supp.2d 410, 439 (M.D. Pa. 2013) (citing *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994)).

Even assuming *arguendo* that counsel's performance was deficient in not calling these individuals as trial witnesses, Evans has not shown that the absence of the testimony from these witnesses was prejudicial. The trial transcript reflects that Evans testified on his own behalf in an attempt to raise a claim of self-defense. According to Evans, the testimony from these witnesses would have bolstered his self-defense claim. Evans has failed to demonstrate that there is a reasonable probability that the outcome of the trial would have been different if counsel had called these witnesses. Without a showing of a reasonable probability of a different outcome, Evans has failed to establish ineffective assistance of counsel and is not entitled to habeas relief on this claim. *Strickland,* 466 U.S. at 687, 694; *Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000).

Because the underlying ineffectiveness claim against trial counsel fails, PCRA counsel was not ineffective for failing to raise it.

    3.    <u>Defense Counsel Coerced Petitioner's Testimony</u>

In a bald assertion, Evans claims that his counsel coerced him into testifying that during the incident he had chrome revolver when in fact he had a black automatic gun. Evans offers no support aside from his own self-serving statement and in his Reply simply states, "Petitioner's claim is the truth the whole truth and nothing but the truth so help me God." Reply at 4. Evans does not offer any elaboration or factual or argumentative support for his claim. An undeveloped claim is insufficient to require relief. A petitioner must set forth facts to support his contention. *See Mayberry v. Petsock*, 821 F.2d 179, 187 (3d Cir. 1987) (finding that Petitioner's vague and general allegations and supporting materials fail to make sufficient showing to justify relief),

*cert. denied*, 484 U.S. 946 (1987). A petition with bald assertions which fails to provide any facts with which to analyze the claim should be dismissed. *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991).

For these reasons, Claim 3 will be dismissed.

4. Conflict of Interest

Evans contends that he was denied his constitutional right to counsel because his attorney was operating under a conflict of interest. Specifically, Evans contends that because his trial counsel had represented Brandon McWright in the past, his counsel had a conflict of interest.[6] Mr. McWright is the brother of Ebony McWright, who was called as a witness by the Commonwealth in Evans's trial. According to Evans, because his trial attorney "received payments from Ebony McWright and talk[ed] to her about this incident and her child (Brandi McWright) . . . caused attorney to believe witness Ebony McWright testimony of Petitioner firearm being chrome revolver which led to coercion of Petitioner." Reply at 14. Evans also claims that his PCRA attorney was ineffective because although Evans told his PCRA counsel to include this claim in his PCRA petition, PCRA counsel failed to do so.

The Sixth Amendment guarantees a criminal defendant counsel's "undivided loyalty." *Government of Virgin Islands v. Zepp,* 748 F.2d 125, 131 (3d Cir. 1984). In *Mickens v. Taylor*, the United States Supreme Court defined an "actual conflict" as "precisely a conflict that affected counsel's performance – as opposed to a mere theoretical division of loyalties." 535 U.S. 162, 171 (2002). In order to prevail on this claim, Evans must demonstrate that the

---

[6] The public criminal docket reflects that on September 10, 2008, an information was filed against Brandon McWright at Criminal Docket No. CP-02-CR-0008434-2008. Counsel entered his appearance on October 20, 2008; and on December 12, 2008, McWright pled guilty and was sentenced. In Evans's criminal case, counsel entered his appearance on August 29, 2007.

13

potential conflict adversely affected his counsel's performance. This Evans is unable to do on the factual record present here.

First, Evans presents no evidence that Attorney Maknoon knew that Brandon McWright was the brother of witness Ebony McWright. More importantly though, Evans has made no showing or provided any record support to demonstrate any adverse effect resulting from counsel's alleged conflict of interest. Rather, it is apparent from the trial transcript that counsel vigorously advocated on behalf of his client and in fact secured an acquittal on the charges of attempted homicide and burglary. Evans has not shown that his counsel's performance was unreasonable.

Accordingly, Evans has failed to establish the "prejudice" in "cause and prejudice." For these reasons, the Court finds that Evans has not shown that his claim of trial counsel's ineffectiveness of counsel has substantial merit under either *Martinez* or *Strickland*. Because the underlying ineffectiveness claim against trial counsel fails, PCRA counsel was not ineffective for failing to raise it. Accordingly, Claim 4 will be denied.

## IV. Certificate of Appealability

Section 102 of AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the

district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. Applying those standards here, the Court concludes that jurists of reason would not find it debatable whether Hopkins' claim should be dismissed. Accordingly, a certificate of appealability will be denied.

## IV. Conclusion

For all of the above reasons, the petition for a writ of habeas corpus will be denied. There has been no substantial showing of the denial of a constitutional right requiring the issuance of a certificate of appealability. An appropriate Order follows.

Dated: November 20, 2017

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: JOSHUA EVANS
JC-1215
SCI Mahanoy
301 Morea Road
Frackville, PA 17932
(via U.S. First Class Mail)

Rusheen R. Pettit
Office of the District Attorney of Allegheny County
(via ECF electronic notification)